IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRANDON JOHNSON,

       Plaintiff,

vs.                                     No.  06cv0136 DJS

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MEMORANDUM OPINION

**THIS MATTER** is before the Court on Plaintiff's (Johnson's) Motion to Reverse or Remand Administrative Agency Decision [**Doc. No. 17**], filed February 9, 2007, and fully briefed on March 9, 2007.  On March 18, 2003, the Commissioner issued a final decision denying Johnson's claim for disability insurance benefits and supplemental security income.  Pursuant to 42 U.S.C. § 405(g), Johnson seeks judicial review of the Social Security Administration's denial of his claims for benefits under Title II and XVI of the Social Security Act.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is not well taken and will be **DENIED**.

## I.  Factual and Procedural Background

Johnson, now thirty-three years old (D.O.B. July 27, 1974), filed his application for disability insurance benefits and supplemental security income on January 23, 2002 (Tr. 94),

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Jo Anne B. Barnhart as the defendant in this action.

alleging disability since October 30, 2000 (Tr. 94), due to status post right hand injury and right

index amputation.  (Tr. 23).  Johnson has a high school education (Special Education) and past

relevant work as a truck driver and warehouse worker (Tr. 105, 25).  On March 18, 2003, the

Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Johnson was not

disabled as he retained "the residual functional capacity (RFC) to perform simple, light level

work."  Tr. 27.  The ALJ also found Johnson's "allegations regarding his limitations [were] not

totally credible."  *Id.*  Johnson filed a Request for Review of the decision by the Appeals Council.

On February 19, 2004, the Appeals Council dismissed Johnson's request for review.  Tr. 8.

Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review

purposes.  Johnson seeks judicial review of the Commissioner's final decision pursuant to 42

U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

(10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20

3

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Johnson makes the following arguments: (1) the ALJ's credibility determination is unsupported and conflicts with the ALJ's other statements and findings; and (2) the ALJ failed to develop the record.

## A.  Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility.  *Id.*  The ALJ may also consider his personal observations of the claimant in his overall evaluation of the claimant's credibility.  *Id.*

Johnson contends the ALJ's finding regarding his credibility was "simply the type of 'conclusory statement' prohibited by **SSR 96-7p**."  Pl.'s Mem. in Support of Mot. to Reverse at 4.  Johnson also claims the ALJ's finding that he was not totally credible is inconsistent with other remarks the ALJ made in the decision and at the administrative hearing.

In his decision the ALJ found:

4

After reviewing Mr. Johnson's medical records and complaints in light of 20 CFR 404.1529 and 416.929, I find that he has a severe impairment, but his overall condition does not preclude him from performing simple, level work. On October 30, 2000, he sustained a right hand injury and underwent surgical intervention. However, by July 17, 2001, he was basically independent with activities of daily living. He elected to undergo amputation of the right index finger on January 22, 2002 because he felt that the index finger often got in the way and actually presented a hazard in his work. His treating physician indicates as early as February 1, 2002, that he capable of performing light duty work. On September 11, 2002, another evaluation is performed by Dr. Chen, which does not alter his previous decision. The claimant testified that he is able to lift 17 pounds with the right hand and 100 pounds with the left hand. He has no problems sitting, standing, walking, bending, reaching or climbing stairs. He no longer requires treatment for his right hand, and has not looked in the DVR program because he thought he had to pay for their services. The claimant is independent with self-care activities, drives, sweeps, mops, vacuums, takes out the trash, cares for his son, prepares simple meals, and shops for groceries with his wife. <u>Based on a full review of the record, I find the claimant to be a very nice and honest young man, however, he is simply not disabled</u>.

Tr. 24 (emphasis added).  Social Security Ruling 96-7p states in pertinent part:

> <u>No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be</u>, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

> *   *   *   *   *   *

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simple to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight.

SSR 96-7p, 1996 WL 374186,  *2 (1996)(emphasis added).   The following colloquy took place

at the **January 16, 2003** Administrative Hearing:

ALJ:   So, if you did that, then we'll hold up and if we don't get them in a few days, then I'll

have to figure out getting them from her.  It would be cheaper if you can send it, because

if I ask that lady, then she'll charge you again.  So, if you got it, get it to us.  Now, you

know, it may be I'll look at that too.  But, it may be I have to find you can do some work.

You know, that's one likelihood, Okay?

Ans:   Yes, sir.

ALJ:   So, I think what you ought to consider, and I'm not going to make my decision until I

look at everything again, <u>I think you were straight with me, you know</u>?

Tr. 67-68 (emphasis added).

The Court has meticulously reviewed the record and finds it supports the ALJ's credibility

determination.  On October 29, 2001, Dr. Chen, Johnson's treating physician and a specialist,

noted: "Work Status:  lifting of injured hand is limited at 15 pounds, **light duty**.  Follow-up: the

patient is discharged from my care, the patient has reached Maximal Medical Improvement."  Tr.

211; *see also* Tr. 210, 212, 213, 214, 215, 216.  Johnson also testified to varied daily activities

that support the ALJ's conclusion.  Tr. 137-146.  Moreover, the ALJ's comments that Johnson

was "an honest young man" and "straight" with him does not mandate a finding that he was

totally credible since Johnson's subjective belief of total disability was not supported by the

record.  Accordingly, the Court finds that the ALJ's credibility determination is supported by

substantial evidence and will not be disturbed.

**B.  Failure to Develop the Record**

An ALJ has the duty to develop the record by obtaining pertinent, available medical

records which come to his/her attention during the course of the hearing. *See generally* 20 C.F.R.

§ 404.944; *Baker v. Bowen*, 886 F.2d 289, 291-92 (10th Cir.1989).  The Court also recognizes

that "[a]lthough a claimant has the burden of providing medical evidence proving disability, the

ALJ has a basic duty of inquiry to fully and  fairly develop the record as to material issues." *Baca*

*v. Dep't of Health and Human Servs.,* 5 F.3d 476, 479-80 (10th Cir. 1993).  This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. *Thompson v. Sullivan*, 987 F.2d at 1492.

Ordinarily, the claimant must in some fashion raise the issue sought to be developed, *see Henrie*, 13 F.3d 350, 360-61 (10th Cir. 1993), which, on its face, **must be substantial**, *see Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991).  Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.  Notwithstanding, the Court acknowledges that the [Commissioner] has broad latitude in ordering consultative examinations. *See Diaz*, 898 F.2d at 778.

Johnson contends the ALJ had a duty "to obtain a copy of the psychological evaluation which [he] informed [the ALJ] he had undergone in relation to his worker's compensation claim." Pl.'s Mem. in Support of Mot. to Remand at 8.  Johnson also argues the ALJ failed in his duty by not taking action in securing additional evidence regarding his psychological state, i.e., obtained a consultative examination.  *Id.*

The following colloquy took place at the **January 16, 2003** Administrative Hearing:

ALJ:   Okay.  Have you had any kind of mental health treatment of any type for emotional problems or anything like that?

ANS:  They were sending me to–

ALJ:   Sometimes you get that– you get a little down when you're not working, you know?

7

ANS: **They sent me through a psychologist**.

ALJ: Um-hum.

ANS: And after workmen's comp agreed to [settle] all this, they cut that off, they said that they wouldn't pay for it anymore.

ALJ: Okay.

ANS: So, I quit going. I went to them, **I seen him once** and they wouldn't – they said they were waiting on pay for the rest of the visits because they were getting ready to settle. And they wanted to get ready to settle so they cut that off.

ALJ: Okay. Do you have – <u>have you taken any kind of medication for depression or anything</u>?

ANS: **No, sir**.

ALJ: What kind of problems do you feel like you have emotionally, mentally?

ANS: I was just– it's hard to explain. **I <u>was</u> real depressed and I <u>would</u> take it out on everybody that was close to me. I <u>would</u> yell, throw stuff and**–

ALJ: <u>Feel pretty angry</u>?

ANS: **Yes, sir**.

ALJ: Are you getting better?

ANS: A little bit.

ALJ: So, it affects your marriage and everything, doesn't it?

ANS: Yes, sir, it puts a strain on it.

ALJ: Well, you're not working, you're hurting on money and those things cause a person to get down. That's why you go down, I guess.

ANS: Yes, sir.

ALJ:   You feel like you're a little bit useless, sitting around the house and your wife working?

ANS:   Yes, sir, because I'm used to working and I'm the type that, you know, if I could do a job,

I'll do it.  And there would be no questions asked.  **But, after I went– I did like 96**

**applications in two weeks and they're all denied**.

ALJ:   Well they're not supposed to treat you harshly because you filed a workmen's comp claim,

but a lot of the times they do.  They figure, uh-oh, you know?

ANS:   **Yes, and they told me I was a high risk and a liability**.

** ** ** ** **

ALJ:   Are you sleeping okay?

ANS:   No, sir.

ALJ:   <u>How many hours do you get usually</u>?

ANS:   **About six hours**.

ALJ:   Do you take any medication to help you sleep?

ANS:   No, sir.

ALJ:   <u>Do you take any kind of medications at all</u>?

ANS:   **I only take medication for acid reflux**.

ALJ:   That's about it, huh?

ANS:   Yes, sir.

** ** ** ** **

ALJ:   You go to malls, clothing stores and stuff like that?

ANS:   No, sir.

ALJ:   Groceries, huh?

9

ANS:   Yes, sir.  Well, we go to – it's a Wal Mart, the Super Center.

ALJ:   You okay with people then?  <u>You okay when you go out in public</u>?

ANS:   **Yes**, **I get agitated since– because I've been out of work and it's** –

ALJ:    <u>Okay, How about friends, you have friends</u>?

ANS:   Yes, sir.

ALJ:   <u>You okay with them</u>?

ANS:   **Yes**.

ALJ:   <u>Okay with your relatives except what you told me about getting down?  Do you get along</u>

<u>with your wife now</u>?

ANS:   **I get along with my wife**.

Tr. 54-56 (emphasis added).

**On January 23, 2002**, Johnson completed a Disability Report Adult.  Tr. 103-112.

Section 2 of the Disability Report asks the following: "What are the illnesses, injuries or

conditions that limit your ability to work?"  Tr. 104.  To this question, Johnson replied: "Right

hand injury, index finger, middle finger."   The next question inquires about how the listed

"illnesses, injuries or conditions" limit the individual's ability to work.  To this question, Johnson

replied, "do not have full use of right hand."  *Id.*  Johnson did not mention depression in this form.

On **January 24, 2002**, Johnson completed a Physical Daily Activities Questionnaire.  Tr.

125-130.  On a "typical day", Johnson noted the following: " Take a shower, eat breakfast, teach

my children ABC's, take drives, take walks, stay at home, watch TV with my kids, eat dinner,

take a shower before bed."  Tr. 125.  There is no mention of depression in this form.  Johnson did

note he did not take public transportation because he got nervous.  Tr. 128.

In Johnson's Reconsideration Disability Report, Johnson noted: "I have a learning disability. I was in Special Education all the way through my school years." Tr. 131. Johnson also noted: "I don't like to go outside during the day because I think everyone is looking at my hand." Tr. 133.

On **June 7, 2002**, Johnson completed another agency form, which included a Daily Activities Section. Tr. 137-146. Under this section, Johnson described his "average day" as:

> Household chores include vaccuming (sic) & cleaning the kitchen counter with a dishrag, food prep is anything that is able to go into the microwave oven and sandwiches. Watch over my kids while they take their daily shower, don't have any hobbies, they used to be putting model cars together. They changed for the worse, I am not able play catch with my son or teach my daughter how to roller skate.

*Id.* Johnson also noted he took his children to the park for the "lunch program," drove an automatic, drove his wife to work every day, and needed no assistance in getting places, cooked three times a day (simple meals)(Tr. 137), and did chores for four people (Tr. 138), and had "no problems grooming myself (Tr. 144)." Significantly, Johnson reported: "No it is not difficult to leave the house, yes I do have a lot of problems being around a lot of people, no problems getting around the store." Tr. 139. As to how he got along with other people, Johnson noted: "No, I don't have problems getting along with people." Tr. 140. Under "Emotional Problems," Johnson noted: "I get depressed because my hand is messed up, because nobody will hire me, because I am missing a part of my body. And all of that being depressed all leads up to being angry. And there is not a thing I can do to make it go away." Tr. 142. Johnson reported he did not think of suicide and had never been hospitalized for an emotional problem. Tr. 143.

The record also shows Johnson did not mention suffering from depression when he filed his **August 1, 2002** Request for Hearing by Administrative Law Judge. Tr. 81. The only reason

for the request was "I am not able to lift 50 lbs.  If I am lucky I am able to lift 15 lbs.  My right hand was my dominit (sic) hand.  Now I am still learning how to do just about everything with the left hand."  *Id.*  Moreover, the Court reviewed all the medical evidence and notes that Johnson never complained of being depressed to any of his treating physicians.

In his decision, the ALJ noted Johnson "becomes agitated but has no problems with people."  Tr. 23.  The ALJ also noted Johnson was "independent with self-care activities, drives, sweeps, mops, vacuums, takes out the trash, cares for his son, prepares simple meals, and shops for groceries with his wife."  Tr. 24.  Substantial evidence supports these findings.

It is not this Court's role on appeal to reweigh the evidence or to substitute its judgment for that of the Commissioner.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).  The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied.  Johnson's arguments essentially seek a **reweighing** of the evidence before the agency, which this Court cannot do.  *See Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1498 (10th Cir. 1992).  Thus, in light of the narrow scope of the Court's review, the Court finds that the ALJ did not fail in his duty to develop the record.  Although Johnson mentioned being depressed because he could not find a job after applying for 96 positions, the evidence shows he continued to take care of two young children, assumed the responsibilities of a house husband, drove his wife to work every morning, was independent in all his daily activities, went shopping without problems, visited with friends and family, and at the administrative hearing discussed his depression in the past tense.  Moreover, Johnson took no medicine for his depression and never sought treatment from a mental

health specialist.  Under the facts of this case, the ALJ did not fail in his duty to request a consultative psychological examination.

Finally, Johnson contends the ALJ failed in his duty to develop the record when  "did not obtain any medical evidence to support or dispose of [his] allegation that he was learning disabled, and such ability impacted his ability to perform work related activity."  Pl.'s Mem. in Support of Mot. to Reverse at 8.  The Court disagrees.

In his decision, the ALJ noted: "The claimant also alleges a learning disorder, however, he is literate enough to function in a workplace environment.  He can do simple reading and writing, and his communication at the hearing presented no problems."  Tr. 23.   Substantial evidence supports this finding.  Johnson had been driving trucks since he was 21 years old.  Tr. 50 ("Yes, sir, I started driving when I turned 21 with a CDL [Commercial Driver's License] license.").  At the administrative hearing, the ALJ questioned Johnson about his Commercial Drivers License. Johnson reported he still had a current Commercial Driver's License.  Tr. 60.  As the Commissioner points out, to obtain a CDL, an applicant must pass an extensive written examination and skills test.  *See* http://www.tax.state.nm.us/pubs/cdl1.pdf; http://www.dmv.org/nm-new-mexico/commercial-license.php.  Johnson also noted he could read and write.  Tr. 103.  Moreover, the Dictionary of Occupational Titles (DOT) provides that a truck driver job requires the reasoning level of R3 and a language level of L2.  *See* DOT, App. C and DOT §906.683-022.  An R3 reasoning level required that Johnson demonstrate he could apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations.  *See* DOT, App. C.  Additionally, a L2 level job requires a proficiency to read at a rate

of 190-215 words per minute with a passive vocabulary of 5000-6,000 words, looking up unfamiliar words in a dictionary for meaning, spelling, and pronunciation. *Id.* Based on the foregoing, the ALJ did fail in his duty to develop the record when he "did not obtain any medical evidence to support or dispose of [Johnson's] allegation that he was learning disabled. Pl.'s Mem. in Support of Mot. to Reverse at 8. Substantial evidence supports the ALJ's finding that Johnson could do simple reading and writing.

**C.  Conclusion**

The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied. After such review, the Court is satisfied that substantial evidence supports the ALJ's finding of nondisability. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**